James L. Wraith, State Bar No. 112234
E-mail:        jwraith@selvinwraith.com
John A. Chatowski, State Bar No.174471
E-mail:        jchatowski@selvinwraith.com
SELVIN WRAITH HALMAN LLP
505 14th Street, Suite 1200
Oakland, CA 94612
Telephone:   (510) 874-1811
Facsimile:    (510) 465-8976

Attorneys for Plaintiff
WESTERN WORLD INSURANCE COMPANY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN WORLD INSURANCE COMPANY,<br><br>      Plaintiff,<br><br>      v.<br><br>UMRO REALTY CORPORATION, a California corporation, and MAURICIO UMANSKY, an individual,<br><br>      Defendants. | CASE NO. 2:18-cv-05594<br><br>**WESTERN WORLD INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY** |

Plaintiff Western World Insurance Company complains and alleges against Defendants UMRO Realty Corporation and Mauricio Umansky as follows:

## I.   JURISDICTION AND VENUE

1.      Jurisdiction of this action is founded upon 28 U.S.C. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendants in this matter and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs, as more fully explained below.  This court also has jurisdiction over these claims under 28 U.S.C. § 2201, the Declaratory Judgment Act.

1

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY          CASE NO. 2:18-cv-05594**

2.    Venue is proper in the Central District of California pursuant to 28 U.S.C. §§ 1391(a)(1) and (c) in that the Defendants reside in this district and because they are subject to personal jurisdiction at the time the action is commenced. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(a)(2) as a substantial part of the events giving rise to the claim occurred in this district, including the execution of the application for insurance and an underlying professional liability claim involving Defendants' business located in Beverly Hills, California. In addition, the contract of insurance that is the subject of this complaint identifies a location within this district – 33 Foothill Road, Suite 100, Beverly Hills, CA 90210 – as the location of the insured's business.

## II.   PARTIES

3.    Plaintiff Western World Insurance Company ("Western World") is a New Hampshire corporation with its principal place of business in Parsippany, New Jersey, which is duly authorized to conduct business in California.

4.    Defendant UMRO Realty Corporation ("UMRO") is a California corporation with its principal place of business in Beverly Hills, California.

5.    Defendant Mauricio Umansky ("Umansky") is an individual who resides in the State of California.  Western World is informed and believes, and on that basis alleges, that Umansky is the Chief Executive Officer and co-owner of UMRO, and Umansky resides in Beverly Hills, California.

## III.   THE INSURANCE APPLICATION

6.    In June 2017, UMRO applied to Western World for an Errors & Omissions Liability Insurance Policy by submitting a Great American-branded application form entitled Real Estate Related Services Errors And Omissions Application which was accepted by Western World ("Application") as UMRO's insurance application for a real estate agent's errors and omissions liability policy for issuance by Western World.  A true and correct copy of the Application is attached hereto as **Exhibit A**, and is incorporated herein by reference.

2

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY       CASE NO. 2:18-cv-05594**

7.    On page 3 of the Application, the Application states: "Value of the largest transaction completed during the past 12 months: $30,000,000."

8.    On page 5 of the Application, the Application states: "Is the Applicant (after proper inquiry of each director, officer or partner of the Applicant) aware of any circumstances, incidents, situation, or accidents … that may result in a claim being made against: (a) the Applicant; … or (e) any past or present partners, directors, officers, or employees of the Applicant …?  NO."

9.    On page 6 of the Application, the Application states: "F. CLAIMS EXPERIENCE: (2). Is the Applicant (or any director, officer, partner or employee of the Applicant, or any other proposed insured) aware of any actual or alleged deficiencies, errors or omissions and work performed by the Applicant or by others for whom the Applicant is legally responsible?  NO."

10.    On page 6 of the Application, the Application states: "It is agreed that any claim or lawsuit against the Applicant, any director, officer, partner or employee of the Applicant, or any other proposed insured, arising from any facts, circumstances, acts, errors or omissions disclosed or required to be disclosed in response to questions F.1, F.2, F.3, F.4 and F.5, above, is hereby expressly excluded from coverage under the proposed insurance policy."

11.    On page 6 of the Application, the Application states: "NOTICE TO APPLICANT-PLEAD READ CAREFULLY: Warranty: It is hereby Understood and Agreed, after proper inquiry of each director, officer, partner, or employee of the Applicant or any other proposed insured, that this application and its representations and warranties shall be deemed to be submitted by or on behalf of and be binding upon the Applicant and each and every proposed insured under the policy.  It is further agreed that any misrepresentations, non-disclosure, concealment, or breach of warranty in this application shall be binding upon the Applicant and each and every proposed insured under the policy whether or not the proposed insured knew of, committed, or was responsible for such misrepresentation, non-disclosure, concealment, or breach of

3

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY        CASE NO. 2:18-cv-05594**

warranty."

12. On page 6 of the Application, the Application states: "We understand and accept … that the insurer will rely upon the truth of the information and statements in this application in deciding whether to issue a policy to the Applicant.

13. On page 6 of the Application, the Application states: "The Applicant agrees that if the information supplied on or attached to this application changes between the time this application is executed and the time that the proposed insurance policy is bound or coverage commenced, the Applicant will immediately notify the Insurer in writing of such changes; and the Insurer fully reserves its rights with respect to the underwriting acceptance or denial of such changes."

14. On page 6 of the Application, the Application states: " … this application shall be basis of the insurance should a policy be bound and issued, and shall become part of the policy."

15. The Application included a Real Estate Related Services Risk Management Supplement Application form ("Supplement Application") and on page 1 of the Supplement Application, the Supplement Application states: "Does the Applicant have written Quality Assurance/Risk Management procedures to avoid or mitigate their exposure to errors & omissions claims arising out of their performing of professional services?  YES."  If "YES", do the procedures ensure:

(c) The conflicts of interest of the Applicant and the Applicant's principles, partners, directors, officers, professional employees or independent contractors are fully disclosed and understood by all parties to "dual agency" transactions?  YES."

16. The Supplemental Application, on page 3, states, " It is hereby understood and agreed that the information provided above is true and correct and is material to the Insurer in deciding whether to issue its policy to the Applicant.  Further, if such information is false or incomplete, it may constitute a misrepresentation that will: (a) permit the Insurer to modify the terms and conditions of the policy issued to the

4

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY      CASE NO. 2:18-cv-05594**

Applicant (including without limitation to excluding any claim arising from or relating to the false information or non-disclosure): or (b) void the policy."

## IV.  THE INSURANCE POLICY

17.     Based upon the representations made by UMRO and its agents and representatives, Western World issued an "Errors And Omissions" liability insurance policy to UMRO for the policy period from August 2, 2017 to August 2, 2018, under policy number BRL 0015249 ("Policy").  A true and correct copy of the Western World Policy is attached hereto as **Exhibit B** and is incorporated herein by reference.

18.     The Policy is subject to all of the terms, conditions, limitations, exclusions, and endorsements contained therein, including the following Limits of Liability: $3 million limit (each claim and annual aggregate), with a $50,000 each claim retention, and throughout the Policy the words "you" and "your" refer to the Named Insured shown in the Common Policy Declarations (which is UMRO Realty Corporation d/b/a The Agency, 33 Foothill Road, Suite 100, Beverly Hills, CA 90210").

19.     The Policy provides: "In consideration of the payment of the premium and reliance upon the statements made and information furnished to us as part of the 'application', and subject to all the provisions of this policy, we agree to provide the insurance described in this Coverage Form and its applicable endorsements."

20.     The Insuring Agreement for the Errors and Omissions Liability of the Policy provides: "For this insurance to apply, all of the following conditions must be met: (b) The "insured" had no knowledge prior to the effective date of this policy of the "wrongful act" or circumstance likely to give rise to a "claim";"

21.     The Policy defines "Application" to mean, in pertinent part, "An application, whether it is ours or another's and any material submitted for this coverage."

22.     The Policy defines "claim" to mean, in pertinent part, "A written demand for monetary relief received by an insured seeking to hold the insured responsible for a

5

"wrongful act", including, but not limited to, the service of suit or the institution of arbitration or mediation proceedings against the insured;

23. The Policy defines "Insured" to mean, "You and any person acting within the scope of his or her duties as a past or present partner, principal, officer, director or employee of yours … independent contractors who are natural persons, but only with respect to professional services performed on your behalf…"

24. The Policy defines "Loss" to mean, "damages and settlements that an "insured" is legally obligated to pay as a result of a "claim" for "wrongful act."… However, "loss" does not include fines, penalties, taxes, damages owed based on an express obligation by written or oral agreement, disgorgement of profits by an "insured"; cost of an "insured's correction; fees, commissions, expenses or costs paid to or charged by an "insured," … or any agreement to provide such relief or amounts owed under any contract or agreement."

25. The Policy defines "Wrongful act" to mean, "any actual or alleged negligent acts or errors or omissions, arising solely out of the "insured's" professional services rendered for others as stated in Item 1 of the Coverage Part Declarations.

26. The Policy contains exclusions under which the Policy does not apply to any "loss" or "defense costs" in connection with any "claim" made against an insured, arising out of, directly or indirectly resulting from, or in consequence of, or in any way involving the following, among others:

    **4.**   **Contractual Liability:** Liability under any contract or agreement, except liability that would exist even in the absence of the contract or agreement.

    **7.**   **Prior Knowledge:** "Wrongful act" or circumstance that an "insured": (a) Had knowledge of prior to the effective date of the policy; and (b) Had a reasonable belief could result in a claim.

    **22.**   **Fee and Other Compensation Disputes:** Return of fees, commissions, premiums or other compensation charged by the

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY**     **CASE NO. 2:18-cv-05594**

"insured".

28.    **Illegal Profit:** The gaining in fact of any profit or advantage to which the "insured" is not legally entitled.

27.    The Policy contains General Conditions under which it is provided that:

"7.    **Application**.  By acceptance of this policy, you agree that the statements in the "application" are true representations, this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the "insured" and us, or any of our Agents, relating to this insurance.

In the event the "application", including materials submitted or required to be submitted, contains any misrepresentation or omission made with the intent to deceive or which materially affects either the acceptance of the risk or hazard assumed by us under this policy, this policy will be void ab initio as to any "insured" who knew the facts misrepresented or the omissions, whether or not such person knew of the "application" or this policy.

For purposes of this clause, only the knowledge of your Chief Executive Officer, chief financial officers, risk manager and general counsel (or the functional equivalent of such positions) will be imputed to all "insured's" who are natural persons.  The knowledge of an "insured", other than the above officers or employees, will not be imputed to any other "insureds" who are natural persons.  The knowledge of any "insured" may be imputed to you."

28.    The Policy contains a "Real Estate Agent, Broker And Related Services Endorsement" which adds the following exclusions to the Policy: "This insurance does not apply to any "loss", in connection with, arising out of, or in any way involving:

I.    Sums received by any "insured" or credited to any "insured's" account;

7

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY        CASE NO. 2:18-cv-05594**

## V.    SETTLEMENT WITH UNITED STATES DEPARTMENT OF JUSTICE ASSET FORFEITURE DEPARTMENT

29.    Sweetwater Malibu LLC ("Sweetwater") was the owner of a parcel of residential property located at 3620 Sweetwater Mesa, Malibu, California ("Property").

30.    Sweetwater's principal and managing member is Teodoro Nguema Obiang Mangue ("Nguema") who is also the Vice President of Equatorial Guiana and the son of the President of Equatorial Guiana (Teodoro Obiang Nguema Mbasogo).

31.    Western World alleges on information and belief that on April 28, 2011, the United States (through the Department of Justice) filed an action against Sweetwater and Nguema seeking forfeiture of the Property, and in keeping with the practice of using forfeited assets where practicable and consistent with law to protect the rights of innocent persons in the interests of justice, the United States intended to utilize the forfeiture of the Property for the benefit and social welfare of the people of Equatorial Guiana.

32.    Western World alleges on information and belief that on October 10, 2014, the United States entered into a Stipulation And Settlement Agreement ("Settlement Agreement") with Sweetwater and Nguema by which Sweetwater and Nguema agreed to liquidate the Property in a manner consistent with the Settlement Agreement.  A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit C**, and is incorporated herein by reference.

33.    Western World alleges on information and belief that the Settlement Agreement specified in pertinent part as follows:

(a)    For the United States and Nguema to jointly select a licensed real estate agent to sell the property at a fair market value established by a jointly selected real estate appraiser (unless the United States and Nguema agreed to a different price in writing), with the sale, sale terms, escrow and buyer to be approved by the United States;

(b)    For the United States to have the right to assume control over the

8

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT
AND RESCISSION OF INSURANCE POLICY          CASE NO. 2:18-cv-05594**

liquidation and sale of the Property if the Sale was not completed within 25 months of the Settlement Agreement;

(c)     For the Property's sale proceeds to be distributed in the following manner: First, sale proceeds will be paid to expenses incurred for the maintenance and sale of the Property; Second, sale proceeds of $10,300,000 will be forfeited to the United States; Third, any and all remaining funds shall be paid to a Charity jointly selected by the United States and Nguema with the funds to be used for the benefit of the people of the Republic of Equatorial Guiana;

34.     Western World alleges on information and belief that the United States and Sweetwater and Nguema jointly selected a real estate appraiser that on November 11, 2014, placed a fair market valuation of the Property of $32 million.

35.     Western World alleges on information and belief that the United States and Sweetwater and Nguema jointly selected UMRO as their licensed real estate agent for the liquidation sale of the Property in late-May 2015.

## VI.  THE PROPERTY SALE

36.     Western World alleges on information and belief that a Residential Listing Agreement was entered into between UMRO and Sweetwater that designated UMRO as the listing agent for the Property from April 18, 2015 through October 18, 2016 ("Listing Period") and provides the Listing Price of the Property shall be determined in accordance with the Settlement Agreement, and provides a 6% brokerage commission for the sale of the Property, that UMRO agrees to cooperate with all the terms set forth in the Settlement Agreement, that the Settlement Agreement provisions will prevail in the event of any conflict with the terms of the Listing Agreement, and that the sale of the Property shall be an all cash transaction at closing.

37.     Western World alleges on information and belief that on or around August 10, 2015, Sweetwater executed a Residential Purchase Agreement And Joint Escrow Instructions ("Purchase Agreement") that specified that the Buyer's purchase contingencies begin to run on the date the United States approves the Buyer as the

9

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY          CASE NO. 2:18-cv-05594**

purchaser of the Property.

38.    Western World alleges on information and belief that UMRO and Umansky procured five (5) purchase offers from prospective buyers ranging in price from $32 million to $33.5 million.

39.    Western World alleges on information and belief that on or about December 14, 2015, Sweetwater issued a Seller's Counter Offer to the prospective buyers to sell the Property for $33.5 million, and that the Seller's Counter Offer specified that the Buyer's purchase contingencies begin to run on the date the United States approves the Buyer as the purchaser of the Property.

40.    Western World alleges on information and belief that prospective buyer Mauricio Oberfeld ("Oberfeld") was the first prospective buyer to accept the Seller's Counter Offer of $33.5 million, on or soon after December 14, 2015.

41.    Western World alleges on information and belief that pursuant to the Settlement Agreement the United States had to approve Oberfeld as the Buyer, and the United States approved Oberfeld as the Buyer on February 8, 2016.

42.    Western World alleges on information and belief that all of the Buyer's contingency periods pursuant to the Purchase Contract (August 10, 2015) and Seller's Counter Offer (December 14, 2015) began to run on February 8, 2016, which is the date of the United States' approval of Oberfeld as the Buyer, and the contingencies periods were set to expire on or about February 29, 2016, and close of escrow for the sale of the Property was to be on or before March 24, 2016.

43.    Western World alleges on information and belief that on February 20, 2016, another prospective purchaser Sam Hakim ("Hakim") issued a letter of intent ("LOI") offering to pay to Oberfeld the sum of $8 million to purchase an assignment of Oberfeld's first-place buyer-position to purchase the Property, and Hakim sent the LOI to UMRO and Umansky.

44.    Western World alleges on information and belief that UMRO and Umansky responded by email on February 22, 2016, to Hakim's LOI, making a

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY      CASE NO. 2:18-cv-05594**

counteroffer on behalf of Oberfeld, demanding the assignment fee be increased from $8 million to a nonrefundable, binding $15 million amount, with UMRO and Umansky sharing a 4% brokerage fee for the $15 million assignment fee with Hakim's broker (Berkshire Hathaway/Aitan Segal).

45.     Western World alleges on information and belief that UMRO and Umansky did not disclose to Sweetwater or the United States that Hakim was offering to pay $8 million to Oberfeld for an assignment of Oberfeld's right to purchase the Property from Sweetwater for $33.5 million, or that Oberfeld was demanding payment of $15 million from Hakim for an assignment of Oberfeld's right to purchase the Property from Sweetwater for $33.5 million.

46.     Western World alleges on information and belief that the $8 million offer by Hakim to purchase an assignment of the right to purchase the Property for $33.5 million, and the $15 million counter-demand by Oberfeld to sell an assignment of the right to purchase the property for $33.5 million, was material evidence that the fair market value of the Property in February 2016 was more than $33.5 million, and that UMRO or Umansky had a fiduciary duty as the real estate broker for the Seller (Sweetwater) to disclose to Sweetwater the negotiations to sell an assignment of Oberfeld's right to purchase the Property for $33.5 million, which was evidence or potential evidence that the Property had a fair market value exceeding $33.5 million.

47.     Western World alleges on information and belief that the Beverly Hills based residential real estate brokerage firm UMRO is one of the largest and most prestigious real estate brokerage firms in Los Angeles.

48.     Western World alleges on information and belief that as co-founder of UMRO in 2011, Umansky has been recognized as having created a real estate agency (UMRO) which has grown to 18 offices worldwide employing 350 agents in more than $6 billion in annual sales since its inception.

49.     Western World alleges on information and belief that Umansky has routinely been recognized since 2012 as one of the most powerful and influential real

11

estate brokers in Los Angeles, that Umansky has sold more homes in the USA priced over $20 million than any other real estate broker, and has handled some of the largest sales in Los Angeles, including the sale of the Playboy mansion in 2016 for $100 million which, at the time of sale, represented the greatest sale price of any residential property in Los Angeles history, and since 2012 Umansky has routinely been ranked as one of the top real estate agents in Los Angeles, and has been ranked by the *The Wall Street Journal* for the past seven consecutive years as being within the Top 10 real estate agents in the United States.

50.    Western World alleges on information and belief that UMRO or Umansky were aware of their fiduciary duties as real estate broker to the Seller (Sweetwater) of the Property to disclose all information regarding the Property's fair market value in March 2016, including the negotiation between Oberfeld and Hakim to sell an assignment of Oberfeld's right to purchase the Property for $33.5 million to Hakim for a price between $8 million and $15 million, and that the negotiation between Oberfeld and Hakim in which UMRO and Umansky participated, was information that UMRO and Umansky had a fiduciary duty to disclose to Sweetwater.

51.    Western World alleges on information and belief that as the deadline approached for the expiration of the Buyer's contingencies for performance of the purchase under the Purchase Agreement and Seller's Counter Offer, that on or about March 15, 2016, Oberfeld requested an extension of the Buyer's contingencies through March 21, 2016, and Sweetwater agreed to the extension, and Sweetwater's agreement to the extension was made without knowledge of the recent negotiation between Hakim and Oberfeld to sell an assignment for price between $8 million and $15 million of Oberfeld's right to purchase the Property for $33.5 million, and that the Seller (Sweetwater) did not have to extend the contingencies for Oberfeld's purchase of the Property for a price of $33.5 million that might be below fair market value.

52.    Western World alleges on information and belief that on or around March 18, 2016, Oberfeld requested a second extension of the Buyer's contingencies, and

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY          CASE NO. 2:18-cv-05594**

Sweetwater granted a second extension of the Buyer's contingencies through March 31, 2016.

53. Western World alleges on information and belief that Sweetwater agreed to the second extension without knowledge of the negotiation between Hakim and Oberfeld, or that the negotiation suggested a purchase price of $33.5 million for the Property was below its fair market value in March 2016.

54. Western World alleges on information and belief that when Sweetwater granted the two (2) extensions of the Buyer's contingencies to Oberfeld, that Sweetwater was ignorant of the negotiation between Oberfeld and Hakim to sell an assignment of Oberfeld's right to purchase the Property for $33.5 million to Hakim for a price from $8 million-$15 million, or that UMRO and Umansky participated in those negotiations, and did not disclose those negotiations to Sweetwater.

55. Western World alleges on information and belief that on March 31, 2016, that Oberfeld identified repair items at the Property in the sum of $1.3 million, and demanded a $1 million credit to make those repairs against the $33.5 million purchase price, effectively reducing the purchase price to $32.5 million, and Oberfeld asserted Oberfeld would waive all the Buyer's contingencies if the Seller (Sweetwater) granted his demand for a $1 million repair credit.

56. Western World alleges on information and belief that on April 7, 2016, UMRO and Umansky notified Sweetwater that Oberfeld would remove all contingencies to complete the purchase of the Property if Oberfeld received a $1 million repair credit.

57. Western World alleges on information and belief that Sweetwater was in a position to reject Oberfeld's request for a $1 million repair credit and demand that Oberfeld immediately pay the full $33.5 million purchase price for the Property, or that Sweetwater could cancel the Purchase Agreement with Oberfeld if Oberfeld did not waive the contingencies, and that Sweetwater could thereafter sell the Property to another Buyer including Hakim, for more than $33.5 million.

13

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY      CASE NO. 2:18-cv-05594**

58.     Western World alleges on information and belief that on April 15, 2016, that UMRO and Umansky recommended to Sweetwater and the United States that Sweetwater and the United States agree to the $1 million repair credit to conclude the sale to Oberfeld for a net price of $32.5 million.

59.     Western World alleges on information and belief that at the time that Sweetwater agreed to extend the Buyer's time period for performing the Buyer's contingencies under the Purchase Agreement and Seller's Counter Offer, and at the time that UMRO and Umansky recommended to Sweetwater and the United States that Sweetwater and the United States agree to the $1 million repair credit to conclude the sale to Oberfeld for a net price of $32.5 million, that UMRO and Umansky had not disclosed and were concealing from Sweetwater and the United States that in the prior month (February 20-22, 2016), an $8 million offer had been made by Hakim to purchase an assignment from Oberfeld of Oberfeld's right to purchase the Property for $33.5 million, or that Oberfeld had counter-demanded a payment price of $15 million for an assignment, and that this undisclosed and concealed information was material to whether the property's fair market value exceeded $33.5 million in March 2016, which was material to whether Sweetwater should extend the Buyer's period of time to waive the Buyer's contingencies, or to whether Sweetwater should grant a $1 million repair credit to Oberfeld to conclude the sale of the Property for a net reduced price of $32.5 million.

60.     Western World alleges on information and belief that the failure of UMRO and Umansky to disclose the negotiation between Oberfeld and Hakim to sell an assignment of Oberfeld's right to purchase the Property for $33.5 million to Hakim for a price from $8 million-$15 million was an obvious violation of fiduciary duties of disclosure owed by a real estate broker to Sweetwater as the seller of the Property.

61.     Western World alleges on information and belief that Sweetwater and the United States, acting without knowledge of the negotiation between Oberfeld and Hakim to sell an assignment of Oberfeld's right to purchase the Property for

14

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY       CASE NO. 2:18-cv-05594**

$33.5 million to Hakim for a price from $8 million-$15 million, agreed to extend the Buyer's period of time to perform the Buyer's contingencies to purchase the Property, and acting upon the recommendation of UMRO and Umansky to grant the $1 million repair credit to Oberfeld, agreed to a $1 million repair credit to Oberfeld on May 11, 2016, thereby reducing the net sales price of the Property to $32.5 million.

62.    Western World alleges on information and belief that on or before May 11, 2016, Oberfeld invited Umansky to participate as an investor in the purchase of the Property from Sweetwater, and to participate as an investor in the subsequent renovation and resale of the Property as an investment, and that Umansky agreed to become an investor in the purchase, renovation and resale of the Property.

63.    Western World alleges on information and belief that UMRO and Umansky were aware that the real estate market was rapidly appreciating in value in mid-2016, that the November 2014 real estate appraisal of the Property at $33.5 million was outdated, that the undisclosed negotiation between Oberfeld and Hakim for the right to purchase the Property for $33.5 million, as well as other information regarding the real estate market, all provided information that the fair market value of the Property was more than $32.5 million, at the time that Sweetwater granted to Oberfeld two extensions of the buyer's contingencies, and at the time that UMRO and Umansky recommended to Sweetwater and the United States that a $1 million repair credit be granted to Oberfeld to conclude the sale of the Property for a net price of $32.5 million, and that none of this information was disclosed by UMRO or Umansky to Sweetwater or the United States, and the nondisclosure and concealment was an obvious violation of the fiduciary duties of disclosure owed by UMRO and Umansky to Sweetwater as the seller of the Property.

64.    Western World alleges on information and belief that Umansky did not notify the United States until June 13, 2016, or notify Sweetwater until June 16, 2016, that Umansky was an investor with Oberfeld in the purchase, renovation and resale of the Property.

15

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY      CASE NO. 2:18-cv-05594**

65. Western World alleges on information and belief that at the time Umansky notified Sweetwater that Umansky was investing with Oberfeld in the purchase, renovation and resale of the Property, that it was too late for Sweetwater to withdraw from the sale of the Property to Oberfeld or reject Oberfeld's request for a $1 million repair credit, or reject Oberfeld's prior two (2) requests to extend the time period for the Buyer's contingencies, which would have enabled Sweetwater to ascertain the Property's full market value in mid-2016, or sell the Property to a different buyer for the Property's full market value, or compel Oberfeld to pay the original $33.5 million purchase price set forth in the Seller's Counter Offer, and that Umansky's participation with Oberfeld as a co-purchaser of the Property and co-investor in the renovation and resale of the Property, were all material facts showing the property had a greater fair market value than $32.5 million, whose nondisclosure was an obvious breach of fiduciary duties to Sweetwater.

## VII. THE RESALE OF THE PROPERTY

66. Western World alleges on information and belief, that less than one year later, that Oberfeld and other investors in the Property, including Umansky, subsequently resold the Property on or around April 1, 2017, for $69.9 million.

67. Western World alleges on information and belief, that in the resale of the Property, UMRO and Umansky were the listing agent.

## VIII. SWEETWATER CLAIM

68. On or about August 15, 2017, Sweetwater sent a written demand letter to UMRO and Umansky asserting a real estate brokers' professional liability claim against UMRO and Umansky for breach of fiduciary duties, breach of statutory duties, negligence and other claims arising from UMRO and Umansky actions as Sweetwater's real estate broker in the sale of the Property to Oberfeld including, but not limited to, a failure to fully disclose to Sweetwater the business relationship between UMRO and Umansky and Oberfeld in the sale of the Property and the resale of the Property, the financial benefits received by UMRO and Umansky, the conflict of

16

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY      CASE NO. 2:18-cv-05594**

interest of UMRO and Umansky, the recommendation to provide Oberfeld with a $1 million repair credit, the failure to disclose material information to Sweetwater regarding the value of the Property, the failure to disclose the negotiations between Oberfeld and Hakim regarding Hakim's $8 million offer to purchase an assignment of Oberfeld's purchase offer to Sweetwater and the United States to buy the Property for $33.5 million or Oberfeld's counterdemand for a $15 million assignment fee from Hakim, the profits derived by UMRO and Umansky from the investment with Oberfeld in renovating and reselling the Property, and other related claims ("Sweetwater Claim").  A copy of the Sweetwater demand letter and UMRO tender of defense to Western World is attached as **Exhibit D**.

69.   Western World alleges on information and belief that the Sweetwater Claim alleges that UMRO and Umansky breached their real estate broker fiduciary duties to Sweetwater (or the United States or both) in failing to disclose the $8 million offer by backup purchaser Hakim to buy an assignment of Oberfeld's purchase offer for the Property, or Oberfeld's $15 million counterdemand to Hakim to sell the assignment of Oberfeld's purchase offer for the Property, that UMRO and Umansky failed to accurately establish or communicate to Sweetwater the fair market value of the Property prior to the completion of the sale to Oberfeld, and that these breaches of fiduciary duties of disclosure to Sweetwater as the Seller of the Property caused the Property to be sold for a lower purchase price than would have been realized if the foregoing was communicated to Sweetwater.

70.   Western World alleges on information and belief that Sweetwater has demanded payment from UMRO and Umansky for their failure to disclose their business relationship with Oberfeld in the sale, renovation and resale of the Property, the financial benefits received by UMRO and Umansky, the conflict of interest of UMRO and Umansky, the recommendation to provide a $1 million repair credit to Oberfeld, the failure to disclose material information regarding the fair market value of the Property, the failure to disclose the assignment negotiations between Oberfeld and

17

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY        CASE NO. 2:18-cv-05594**

Hakim, the failure to disclose Umansky's profits from investing with Oberfeld in renovating and reselling the Property, and that Sweetwater has made a written demand for payment from UMRO and Umansky for an amount of $8 million or more, which Sweetwater asserts in a second written demand letter of February 21, 2018, could be funded by payment of the Policy's limit of liability ($3 million) and payment ($5 million) by UMRO and Umansky.  A copy of the second Sweetwater demand letter is attached as **Exhibit E**.

## IX.  UMRO PROPERTY SALES

71.    Western World alleges on information and belief that in the 12 months predating UMRO's submission of the Application to Western World, that UMRO and Umansky was the Listing Agent for the $100 million sale in August 2016, of the Playboy Mansion at 10236 Charing Cross Road, Los Angeles, which UMRO and Umansky has advertised and promoted as the largest sales price for any residence in Los Angeles.

72.    Western World alleges on information and belief that in the 12 months predating UMRO's submission of the Application to Western World, that UMRO was the Listing Agent for the $100 million sale in October 2016 of the Mansion at 301 North Carolwood Drive, Los Angeles, which UMRO has also advertised and promoted as the largest sales price for any residence in Los Angeles.

73.    Western World alleges on information and belief that in the 12 months predating UMRO's submission of the Application to Western World, that UMRO was the Listing Agent for the Tom Cruise Mansion in Beverly Hills that sold in June 2016 for $38 million.

74.    Western World alleges on information and belief that in the 12 months predating UMRO's submission of the Application to Western World, that UMRO was a real estate broker in the sale of other properties that sold for values exceeding the $30 million amount that UMRO misrepresented and concealed in the Application to Western World was the value of the largest transaction completed during the past 12

18

WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT
AND RESCISSION OF INSURANCE POLICY        CASE NO. 2:18-cv-05594

months including, but not limited to, UMRO's undisclosed resale of the Property in April 2017, for $69.9 million, which is part of the Sweetwater Claim against UMRO.

## X.  INSURANCE CLAIM

75.    September 27, 2017, UMRO and Umansky tendered the Sweetwater Claim to Western World for defense and indemnity under the Policy, and through the present, are demanding that Western World defend and settle the Sweetwater Claim for the policy's $3 million limit.  A copy of the Sweetwater demand letter and UMRO tender of defense to Western World is attached as **Exhibit D**.

76.    Western World is defending UMRO and Umansky in the Sweetwater Claim, through defense counsel selected by UMRO and Umansky, pursuant to a comprehensive reservation of rights to disclaim coverage for claims that are uninsured or not covered by the Policy.

## FIRST CAUSE OF ACTION

### (Rescission Of Policy)

77.    Western World refers to paragraphs 1 through 76, inclusive, and by reference makes them a part hereof.

78.    UMRO and Umansky submitted the Application to Western World for the Policy.

79.    The questions asked by the Application were important and material to Western World in determining whether UMRO and Umansky were a risk that Western World was willing to undertake for the Policy at issue and what premium would be appropriate to charge for the coverage provided.

80.    Western World is informed and believes, and on that basis, alleges, that UMRO and Umansky failed to disclose, misrepresented, or concealed material information in the Application, including but not limited to, the following questions:

(a)    Question 2E: Value of the largest transaction completed during the past twelve months:  Answer: "$30,000,000."

(b)    Question F2: Is the Applicant (after proper inquiry of each director,

19

officer or partner of the Applicant) aware of any circumstances, incidents, situation or accidents … that may result in a claim being made against: (a) Applicant; … or any past or present partners, directors, officers, or employees of the Applicant … ? Answer: "NO."

(c)    Question F4: Is the Applicant (or any director, officer, partner or employee of the Applicant, or any other proposed insured) aware of any actual or alleged deficiencies, errors or omissions in work performed by the Applicant or by others for whom the Applicant is legally responsible?  Answer: "NO."

81.    Western World is informed and believes that UMRO or Umansky failed to disclose, misrepresented, or concealed material information in the Application, including but not limited to, the question of the value of the largest transaction completed during the past 12 months (i.e., June 2016-2017), which UMRO and Umansky misrepresented as being a real estate transaction with a value of $30 million.

82.    Western World is informed and believes that UMRO or Umansky were the real estate broker within 12 months preceding the submission of the Application to Western World for the two (2) largest sales of residential property in Los Angeles history consisting of the $100 million sale of the Playboy Mansion at 10236 Charing Cross Road, Los Angeles, in August 2016,  and the $100 million sale of the Mansion at 301 North Carolwood Drive, Los Angeles, in October 2016, which UMRO has advertised and promoted as the two (2) largest sales prices in history for any residence in Los Angeles.

83.    Western World is informed and believes UMRO or Umansky were the real estate broker within 12 months preceding the submission of the Application to Western World for the sale of the Tom Cruise Mansion for $38 million.

84.    Western World is unaware of all the of real estate transactions involving UMRO or Umansky as real estate brokers, during the 12 months preceding UMRO's submission of the Application to Western World, that had a transaction value exceeding $30 million, but Western World is aware that in April 2017, only two

20

months before UMRO submitted the Application to Western World, that UMRO and Umansky were the real estate broker listing agent for the resale of the Property by Oberfeld for a value of $69.9 million, because that sale is a part of the Sweetwater Claim.

85.    Although the total number of transactions completed by UMRO or Umansky in the 12 months preceding the submission of the Application to Western World that had a value exceeding $30 million is unknown to Western World, there is no question that UMRO or Umansky were involved in multiple transactions exceeding $30 million which UMRO misrepresented to Western World as being the value of the single largest transaction completed by UMRO during the previous 12 months.

86.    Western World is informed and believes that UMRO or Umansky failed to disclose, misrepresented, or concealed material information in the Application, including but not limited to, the question of whether  the Applicant (after proper inquiry) was aware of any circumstances, incidents, situation or accidents that may result in a claim being made against Applicant and the question of (c) whether the Applicant or any director, officer, partner or employee was aware of any actual or alleged deficiencies, errors or omissions in work performed by the Applicant.

87.    Western World is informed and believes that at the time UMRO submitted the Application to Western World, that UMRO or Umansky were aware of the breaches of their fiduciary duties, and statutory duties, and acts of negligence toward Sweetwater in the sale of the Property as previously identified herein, and committed in the course of the sale of the Property to Oberfeld, and thereafter, and were aware that these breaches of their fiduciary duties, and statutory duties, and acts of negligence toward to Sweetwater could give rise to the Sweetwater Claim against UMRO or Umansky.

88.    Western World alleges on information and belief that the breaches of fiduciary duties, breach of statutory duties, negligence and other claims arising from UMRO and Umansky actions as Sweetwater's real estate broker in the sale of the

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT
AND RESCISSION OF INSURANCE POLICY        CASE NO. 2:18-cv-05594**

Property to Oberfeld are alleged by Sweetwater to include, but are not limited to, a failure to fully disclose to Sweetwater the business relationship between UMRO and Umansky and Oberfeld in the sale of the Property and the resale of the Property, the financial benefits to be received by UMRO and Umansky from the purchase and resale of the Property, the conflict of interest of UMRO and Umansky due to their business venture with Oberfeld in the purchase and resale of the Property, their recommendation to Sweetwater that Sweetwater provide Oberfeld with a $1 million repair credit at a time when undisclosed evidence suggested the fair market value of the Property was greater than $33.5 million or (after a $1 million repair credit) $32.5 million, the failure to disclose material information regarding the value of the Property, the failure to disclose the negotiations between Oberfeld and Hakim regarding Hakim's $8 million offer to purchase an assignment of Oberfeld's purchase offer to Sweetwater and the United States to buy the Property for $33.5 million or Oberfeld's counter-demand for a $15 million assignment fee from Hakim, the failure to provide the foregoing information to Oberfeld so that Oberfeld could consider whether to grant extensions of Buyer's contingencies to Oberfeld or cancel the sale to Oberfeld if Oberfeld did not timely perform for the full $33.5 million purchase price, or the profits derived by UMRO and Umansky from the investment with Oberfeld in renovating and reselling the Property, and other related claims ("Sweetwater Claim").

89. Western World is informed and believes that UMRO or Umansky's responses to the questions in the Application were false or materially incomplete. With respect to the questions referenced in the preceding paragraph of this complaint, the responses were false or materially incomplete in that the responses failed to disclose, misrepresent, or concealed the following information:

(a) Within the past twelve months of the Application's submission to Western World in June 2017, UMRO and Umansky completed the resale of the Property on behalf of Oberfeld for $69.9 million, that UMRO and Umansky sold the Playboy Mansion for $100 million, that UMRO sold the Holmby Hills Mansion for

22

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY          CASE NO. 2:18-cv-05594**

$100 million, that UMRO sold the Tom Cruise Mansion for $38 million, or that UMRO or Umansky sold other properties as yet unknown to Western World, all for values exceeding $30 million which UMRO and Umansky misrepresented to Western World in the Application was the largest single transaction made by UMRO or Umansky in the prior 12 months.

90. Western World is informed and believes that UMRO or Umansky's responses to the questions in the Application were false or materially incomplete. With respect to the questions referenced in the preceding paragraph of this complaint, the responses were false or materially incomplete in that the responses failed to disclose, misrepresent, or concealed the following information:

(a) UMRO and Umansky failed to fully disclose to Sweetwater the business relationship between UMRO and Umansky and Oberfeld in the sale of the Property and the resale of the Property, the financial benefits to be received by UMRO and Umansky from the purchase and resale of the Property, the conflict of interest of UMRO and Umansky due to their business venture with Oberfeld in the purchase and resale of the Property, their recommendation to Sweetwater that Sweetwater provide Oberfeld with a $1 million repair credit at a time when undisclosed evidence suggested the fair market value of the Property was greater than $33.5 million or (after a $1 million repair credit) $32.5 million, the failure to disclose material information regarding the value of the Property, the failure to disclose the negotiations between Oberfeld and Hakim regarding Hakim's $8 million offer to purchase an assignment of Oberfeld's purchase offer to Sweetwater and the United States to buy the Property for $33.5 million or Oberfeld's counter-demand for a $15 million assignment fee from Hakim, the failure to provide the foregoing information to Oberfeld so that Oberfeld could consider whether to grant extensions of Buyer's contingencies to Oberfeld or cancel the sale to Oberfeld if Oberfeld did not timely perform for the full $33.5 million purchase price, or the profits derived by UMRO and Umansky from the investment with Oberfeld in renovating and reselling the Property, and other related claims

23

("Sweetwater Claim").

91.     Western World alleges on information and belief that UMRO and Umansky were aware, or should have been aware, that the failure to disclose the preceding information to Sweetwater was an actual or alleged breach of UMRO and Umansky's real estate brokers' fiduciary duties to Sweetwater that may result in a claim being made against UMRO or Umansky.

92.     Western World alleges on information and belief that UMRO and Umansky were aware, or should have been aware, that the failure to disclose the preceding information to Sweetwater constituted actual or alleged deficiencies, errors or omissions in work performed by UMRO or Umansky to Sweetwater in the sale of the Property to Oberfeld.

93.     Western World is informed and believes that UMRO or Umansky knew that the responses provided to Western World in the Application, including the misrepresentation or concealment of the information in the preceding paragraph was incorrect or incomplete.

94.     The key California Insurance Code Provisions that permit an Insurance Company to rescind the Policy where its policyholder, either intentionally or unintentionally, fails to disclose a material fact in its Application for the Policy, include but are not limited to, the following:

(i) Section 330.  Concealment Defined.  Neglect to communicate that which a party knows, and not to communicate, is concealment.

(ii) Section 331.  Effect of Concealment.  Concealment, whether intentional or unintentional, entitles the injured party to rescind the insurance.

(iii) Section 332.  Required Disclosure.  Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, in which the other has not the means of ascertaining.

(iv) Section 334.  Materiality.  Materiality is to be determined not by the

24

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY      CASE NO. 2:18-cv-05594**

event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries.

(v) Section 356. Time of Reference. The completion of the contract of insurance is the time to which a representation must be presumed to refer.

(vi) Section 358. Falsity. A representation is false when the facts fail to correspond with its assertions or stipulations.

(vii) Section 359. Effect of Material False Representation. If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false.

(viii) Section 360. Materiality. The materiality of the representation is determined by the same rule as the materiality of a concealment.

95. UMRO or Umansky's failure to disclose the preceding information in the Application to Western World concealed from Western World that UMRO or Umansky had significant liability to Sweetwater for breaches of real estate brokers' fiduciary duties, statutory duties and negligence toward the seller of the Property, including exposure to actual damages, penalties, punitive damages, litigation costs and attorneys' fees.

96. UMRO or Umansky's misrepresentations and concealments in the Application are material to Western World's decision to issue the Policy because had Western World known that UMRO or Umansky's responses to the Application concealed facts and included misrepresentations, including UMRO or Umansky's exposure to significant civil liability, Western World would not have issued the Policy, or would have issued the Policy subject to materially different terms and conditions including, but not limited to, issuing the Policy with an endorsement deleting coverage for liabilities arising from the sale of the Property to Oberfeld, or the resale of the Property by Oberfeld.

25

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY      CASE NO. 2:18-cv-05594**

97.    Western World hereby notifies UMRO and Umansky, pursuant to California Insurance Code §1691, of Western World's intent to rescind the Policy, and that Western World intends the service of the Summons and Complaint in this action to serve as formal notice of rescission of the Policy.  Western World also hereby notifies UMRO that Western World hereby offers to restore to UMRO any insurance premiums paid for the Policy by UMRO, and that Western World intends this pleading to be deemed to constitute Western World's offer to repay to UMRO the Insurance premiums received by Western World for the Policy, subject to offset for sums paid by Western World to defend UMRO or Umansky (or any other insured under the Policy) against the claims asserted in the Sweetwater Claim, or any other claim that might be asserted against UMRO or any other insured in the future, according to proof, as will return the parties to a position *status quo ante*.

98.    Western World seeks an order rescinding the Policy issued to UMRO, based upon UMRO or Umansky's material misrepresentations in the Application submitted to Western World for the Policy, and for the parties to be returned to a position *status quo ante* through reimbursement to Western World from UMRO or Umansky of policy benefits paid on behalf of UMRO or Umansky, offset by the amounts paid by UMRO for insurance premium under the rescinded Policy, so that the Policy is null and void ab initio.

99.    Western World seeks an order rescinding the Policy because Western World has no other adequate remedy at law.  Western World will suffer substantial harm and injury under the Policy if the Policy is not rescinded because Western World has expended, and will continue to expand, substantial sums in the defense of UMRO or Umansky, and may be found liable to indemnify UMRO or Umansky for a risk materially different from the risk disclosed to Western World or the risk that Western World bargained to cover, and all in an amount which exceeds the jurisdictional minimum.

///

26
**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY    CASE NO. 2:18-cv-05594**

## SECOND CAUSE OF ACTION

### (Declaratory Judgment – Duty to Defend)

100. Western World refers to Paragraphs 1 through 99, inclusive, and by reference makes them a part hereof.

101. There is at present a controversy between Western World and UMRO or Umansky in that Western World contends that there is no coverage under the Policy for the claims asserted by Sweetwater, and therefore no duty to defend UMRO or Umansky. Western World is informed and believes and thereon alleges that UMRO or Umansky contends otherwise.

102. Western World requests that this Court declare that there is no potential for coverage and, therefore, no duty to defend UMRO or Umansky under the Policy with respect to the Sweetwater Claim for the reasons set forth below.

103. Western World is informed and believes that the Sweetwater Claim against UMRO or Umansky includes claims seeking recovery for actions by UMRO or Umansky that do not constitute under the Policy's Insuring Clause a "wrongful act" which is defined as an "actual or alleged negligent act or error or omission in the rendering of real estate brokers' professional services," or, in the alternative, constitute or are alleged to constitute the "wrongful act" or "circumstance" that was likely to give rise to the Sweetwater Claim, and was within the knowledge of UMRO or Umansky, prior to the effective date of the Policy on August 2, 2017. See; Exhibit B, Errors And Omissions Insurance Coverage Form, Section I-Insuring Agreements, Errors and Omissions Liability; and, Section II- Definitions.

104. Accordingly, Western World requests that this Court declare there is no coverage under the Policy for the Sweetwater Claim that does not seek recovery from UMRO or Umansky for an actual or alleged negligent act or error or omission in the rendering of real estate brokers' professional services, and therefore that Western World has no duty to defend UMRO or Umansky for such uninsured claims.

105. Accordingly, Western World requests that this Court declare there is no

27

WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT
AND RESCISSION OF INSURANCE POLICY        CASE NO. 2:18-cv-05594

coverage under the Policy for the Sweetwater Claim that arises from an alleged "wrongful act" or "circumstance" that was likely to give rise to the Sweetwater Claim, and was within the knowledge of UMRO or Umansky, prior to the effective date of the Policy on August 2, 2017.

106.   Western World is informed and believes that the Sweetwater Claim against UMRO or Umansky includes claims seeking recovery that or excluded from coverage by the Policy's exclusions including, but not limited to, those exclusions set forth below in this paragraph, which state that the Policy's "insurance does not apply to any "loss", in connection with, arising out of, or in any way involving the following:

**4.    Contractual Liability:** Liability under any contract or agreement, except liability that would exist even in the absence of the contract or agreement.

**7.    Prior Knowledge:** "Wrongful act" or circumstance that an "insured": (a) Had knowledge of prior to the effective date of the policy; and (b) Had a reasonable belief could result in a claim.

**22.    Fee and Other Compensation Disputes:** Return of fees, commissions, premiums or other compensation charged by the "insured".

**28.    Illegal Profit:** The gaining in fact of any profit or advantage to which the "insured" is not legally entitled.

**Real Estate Agent, Broker And Related Services Endorsement**

**I.**    Sums received by any "insured" or credited to any "insured's" account;

107.   Western World is informed and believes that the Sweetwater Claim against UMRO or Umansky are excluded by the Policy's "Prior Knowledge" Exclusion because prior to the inception of the Policy on August 2, 2017, UMRO or Umansky knew that UMRO or Umansky had knowledge that the failure to disclose the negotiation between Oberfeld and Hakim for the sale of an assignment of Oberfeld's

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY          CASE NO. 2:18-cv-05594**

acceptance of Sweetwater's $33.5 million offer to sell the Property, with an assignment price between $8 million to $15 million, was a breach of fiduciary duties to Sweetwater, and UMRO or Umansky had a reasonable belief there breach of fiduciary duties to Sweetwater could result in a claim by Sweetwater against UMRO or Umansky for those breach of fiduciary duties.

108.    Western World is informed and believes that the Sweetwater Claim against UMRO or Umansky are excluded by the Policy's "Prior Knowledge" Exclusion because prior to the inception of the Policy on August 2, 2017, UMRO or Umansky knew that UMRO or Umansky had knowledge that the failure to disclose Umansky's business relationship with Oberfeld including, but not limited to, the purchase of the Property and the subsequent renovation and resale of the Property, was a breach of fiduciary duties to Sweetwater, and UMRO or Umansky had a reasonable belief there breach of fiduciary duties to Sweetwater could result in a claim by Sweetwater against UMRO or Umansky for those breach of fiduciary duties.

109.    Western World is informed and believes that the Sweetwater Claim against UMRO or Umansky are excluded by the Policy's "Prior Knowledge" Exclusion because prior to the inception of the Policy on August 2, 2017, UMRO or Umansky knew that UMRO or Umansky had knowledge that the fair market value of the Property exceeded the $33.5 million purchase price that Oberfeld initially agreed to pay by accepting the Seller's Counter Offer, and that this information was not disclosed to Sweetwater by UMRO or Umansky at the time UMRO or Umansky recommended to Sweetwater that the Seller's Counter Offer be made, and was not disclosed when Oberfeld subsequently requested to extensions on the Buyer's contingencies, and was not disclosed when Oberfeld demanded a $1 million repair credit, that reduced the net sale price of the Property to $32.5 million, which was even further below the Property's fair market value at that time, and that UMRO or Umansky's failure to disclose these facts to Sweetwater at each of the foregoing stages of the sale transaction, was a breach of fiduciary duties to Sweetwater, and UMRO or Umansky

29

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT
AND RESCISSION OF INSURANCE POLICY        CASE NO. 2:18-cv-05594**

had a reasonable belief there breach of fiduciary duties to Sweetwater could result in a claim by Sweetwater against UMRO or Umansky for those breach of fiduciary duties.

110. Accordingly, Western World requests that this Court declare in connection with the Prior Knowledge Exclusion that there is no coverage under the Policy for the Sweetwater Claim, and that Western World therefore has no duty to defend UMRO or Umansky against the Sweetwater Claim.

111. Western World is informed and believes that the Sweetwater Claim seeks recovery from UMRO or Umansky of fees, commissions, compensation, profits, and other sums paid to or received by UMRO or Umansky in connection with the sale of the Property to Oberfeld, or the resale of the Property by Oberfeld, which are claims for monetary relief excluded from coverage by the Contractual Liability Exclusion, Fee And Other Compensation Disputes Exclusion, Illegal Profit Exclusion, and Sums Received By Any Insured For Credited To Any Insured's Account Exclusion.

112. Accordingly, Western World requests that this Court declare in connection with the Contractual Liability Exclusion, Fee And Other Compensation Disputes Exclusion, Illegal Profit Exclusion, and Sums Received By Any Insured For Credited To Any Insured's Account Exclusion, that there is no coverage under the Policy for the Sweetwater Claim that seeks recovery for these excluded monetary relief claims.

113. The Policy's Errors And Omissions Insurance Coverage Form EO01 (10/16) states under Section V- Conditions, ¶ B, General Conditions, subpart 7, "Application," that UMRO and Umansky agreed by accepting the Policy that the statements in the "application" are true representations and that this Policy is issued in reliance upon the truth of such representations, and in the event the "application," including material submitted a required to be submitted, contains any misrepresentation or omission made with the intent to deceive or which materially affects either the acceptance of the risk or hazard assumed by Western World under the Policy, the Policy will be *void ab initio* as to any "insured" who knew the facts

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY        CASE NO. 2:18-cv-05594**

misrepresented or the omissions, whether or not such person knew of the "application" or this Policy.  For purposes of this clause, only the knowledge of your Chief Executive Officer (Umansky) will be imputed to all "insureds" who are natural persons, and the knowledge of any "insured" including CEO Umansky, may be imputed to the named insured UMRO.

114.   Western World is informed and believes that the Application" submitted to Western World for the Policy by UMRO contains misrepresentations or omissions which materially affects either the acceptance of the risk or hazard assumed by Western World under the Policy, and that under the Policy's General Conditions, the Policy is *void ab initio* as to UMRO because UMRO knew the misrepresented facts or omissions, and as to Umansky because Umansky knew the misrepresented facts or omissions, and as to any other "insureds" who are natural persons because Umansky is the CEO and his knowledge is imputed to any other "insureds" who are natural persons, and is also imputed to the named insured UMRO.

## THIRD CAUSE OF ACTION

### (Declaratory Judgment – Duty to Indemnify)

115.   Western World refers to paragraphs 1 through 112, inclusive, and by reference makes them a part hereof.

116.   There is at present a controversy between Western World and UMRO or Umansky in that Western World contends that there is no coverage under the Policy for the claims asserted by Sweetwater, and therefore no duty to indemnify UMRO or Umansky.  Western World is informed and believes and thereon alleges that UMRO or Umansky contends otherwise.

117.   Western World requests that this Court declare that there is no potential for coverage and, therefore, no duty to indemnify UMRO or Umansky under the Policy with respect to the Sweetwater Claim for the reasons set forth in Paragraphs No. 1-112, as set forth herein.

118.   Accordingly, Western World requests that this Court declare that there is

31

no coverage under the Policy for the Sweetwater Claim, and that Western World therefore has no duty to indemnify UMRO or Umansky against the Sweetwater Claim.

## FOURTH CAUSE OF ACTION

### Reimbursement Against UMRO or Umansky

119.   Western World refers to paragraphs 1 through 116, inclusive, and by reference makes them a part hereof.

120.   Western World contends that it is entitled to reimbursement from UMRO or Umansky for all sums paid to defend or indemnify UMRO or Umansky against the Sweetwater Claim because Western World house, and has had, no duty to defend or indemnify UMRO or Umansky against the Sweetwater Claim, and/or because the Policy is subject to rescission.

121.   Western World is defending UMRO and Umansky against the Sweetwater Claim, and has incurred and continues to incur attorneys' fees and costs on behalf of UMRO or Umansky a.  Western World is providing the defense for UMRO or Umansky under a reservation of rights, including the right to seek reimbursement from UMRO or Umansky of attorneys' fees, or indemnity payments for settlement or satisfaction of judgment against them, and costs and litigation expenses paid by Western World to defend uninsured or uncovered claims, or payment of settlement or satisfaction of judgment paid by Western World to indemnify uninsured or uncovered claims, are recoverable from UMRO or Umansky, pursuant to *Buss v. Superior Court,* 16 Cal.4th 35 (1997), and *Scottsdale Ins. Co. v. MV Transportation,* 36 Cal.4th 643 (2005).

122.   As a further alternative, Western World is entitled to reimbursement from UMRO or Umansky for all sums it has paid for defense and indemnity as to any and all claims arising under the Policy because the Policy is subject to rescission and *void ab inito,* and the parties are therefore entitled to be returned to *status quo ante*.

///

///

32

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY          CASE NO. 2:18-cv-05594**

**PRAYER**

WHEREFORE, Plaintiff Western World Insurance Company prays for judgment against UMRO or Umansky as follows:

1.     For entry of judgment rescinding the Policy and returning the parties to a position *status quo ante*, through UMRO or Umansky's reimbursement to Western World of all policy benefits paid on behalf of UMRO or Umansky or any other "insured" under the Policy, offset by the amounts paid by UMRO four insurance premiums for the rescinded Policy, according to proof;

2.     For a judicial declaration by the Court that Western World has no duty to defend UMRO or Umansky in the Sweetwater Claim under the Policy;

3.     For a judicial declaration by the Court that Western World has no duty to indemnify UMRO or Umansky in the Sweetwater Claim under the Policy;

4.     For entry of judgment against UMRO or Umansky requiring UMRO or Umansky to reimburse Western World for all sums paid by Western World to investigate and defend and indemnify UMRO or Umansky against the Sweetwater Claim, or in the alternative, to reimburse Western World for all sums paid to investigate and defend against uninsured claims, according to proof, or in the further alternative, to reimburse Western World all sums expended under the Policy less insurance premium paid, pursuant to a Judgment of Rescission.

5.     For such other and further relief as the court deems just and proper.

Dated:  June 25, 2018                    SELVIN WRAITH HALMAN LLP


                                        By:   /s/ James L. Wraith
                                              James L. Wraith
                                              John A. Chatowski
                                              Attorneys for Plaintiff
                                              WESTERN WORLD INSURANCE
                                              COMPANY

258026

**WESTERN WORLD'S COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION OF INSURANCE POLICY          CASE NO. 2:18-cv-05594**